UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-2331 JGB (AJRx)** | Date | May 6, 2026 |
|---|---|---|---|
| Title | *Cristina Elizabeth Quinaluiza Chango v. Warden, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:    Order: (1) GRANTING Petitioner's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 2) (IN CHAMBERS)**

Before the Court is Petitioner Cristina Elizabeth Quinaluiza Chango's ex parte application for a temporary restraining order.  ("Application," Dkt. No. 2.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in relation to the Application, the Court **GRANTS** the Application.

## I.    BACKGROUND

On May 4, 2026, pro se Petitioner Quinaluiza Chango ("Petitioner") filed a verified petition for writ of habeas corpus. (Dkt. No. 1.)  The same day, Petitioner filed the instant Application.  (Application.)  The Petition raises the following grounds for relief: (1) violation of the Immigration and Nationality Act ("INA") for failure to provide an adequate bond hearing; and (2) violation of the Fifth Amendment Due Process Clause.  (See Petition.)  Petitioner's Application is supported by various documents explaining her immigration status and detention. (See Petition.)

On May 4, 2026, the Court ordered the Government to respond by May 5, 2026, at 5:00 p.m.  (Dkt. No. 6.)  As of the date of this order, the Government has not filed a response.
//
//

---

## II.  FACTS

Petitioner is a citizen of Ecuador and was born on August 17, 1991.  (Petition at 4.)  She entered the United States on July 15, 2024, near Fort Hancock, Texas, seeking protection from persecution in her home country.  (Id.)  Upon entry, she was not admitted or paroled, and a Notice to Appear was issued charging her as present without admission or parole.  (Id.)  She was initially arrested by immigration authorities on July 23, 2024.  (Id.)  Shortly thereafter, Immigration and Customs Enforcement ("ICE") determined she was not a flight risk or a danger, and released her on an Order of Release on Own Recognizance.  (Id.)  She fully complied with all conditions of her release and reported to ICE as instructed.  (Id.)  On February 18, 2026, she was re-detained by ICE in Long Beach, California, while voluntarily appearing for a scheduled, routine immigration check-in.  (Id.)  Plaintiff has no criminal history whatsoever.  (Id. at 5.)  Plaintiff's removal proceedings are still pending, and she does not have a final order of removal.  (Id.)  She is the mother of two minor children, aged 4 and 15, who are financially dependent on her for support.  (Id.)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 61(b)(1)(A).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").
//
//

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk MG

## IV. DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that she is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tips in her favor. Winter, 555 U.S. at 20. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).

### A. Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Petitioner argues that her detention violates her Fifth Amendment due process rights. (Petition at 8.) "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'" Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

The Supreme Court has recognized that an individual on parole, which is analogous to release on own recognizance, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon, 411 U.S. at 781. Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens released on their own recognizance. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

---

**CIVIL MINUTES—GENERAL**     Initials of Deputy Clerk MG

Further, the Court notes that the Government has not opposed Plaintiff's Application. Thus, between lack of opposition and the facts as pled, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[1] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an extended period. Morrissey, 408 U.S. at 482. Here, Petitioner received her release on own recognizance in July 2024. (Petition at 4.) Thus, DHS released Petitioner on some conditions for more than 18 months. Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no apparent process offered to Petitioner during her re-detention. (See Petition, Application.) The risk of erroneous deprivation is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." Zadvydas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). The Government's previous decision to release Petitioner demonstrates that the Government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

## B.      Irreparable harm

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of her constitutional rights. "It is well established that the deprivation of constitutional

---

[1] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in the context of due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

rights 'unquestionably constitutes irreparable injury.'" <u>Hernandez v. Sessions</u>, 872 F.3d 976, 994 (9th Cir. 2017) (quoting <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." <u>Hernandez</u>, 872 F.3d 976, 995 (9th Cir. 2017). Therefore, Petitioner faces irreparable harm.

## C.      Balance of equities and public interest

Where the government is the opposing party, the balancing of the equities and the public interest merge. <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. <u>Winter</u>, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." <u>Vargas v. Jennings</u>, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." <u>Zepeda v. U.S. Immigr. & Nat. Serv.</u>, 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention and the resulting emotional harm. Therefore, the Court finds that the only reasonable relief is Petitioner's release.

Due to the minimal harm suffered by the Government, the Court will not require security.

## V.      CONCLUSION

For the reasons described above, the Court **GRANTS** the Application. Accordingly, the Court finds Petitioner is entitled to a preliminary injunction and **ORDERS** the Government to release Petitioner from its custody immediately.

**IT IS SO ORDERED.**